**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL HODGE, | ) | CASE NO. 5:25-cv-01297-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Crystal Hodge ("Hodge" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and OVERRULES Plaintiff's Statement of Errors.

## II. Procedural History

On May 8, 2023, Hodge filed an application for SSI, alleging a disability onset date of January 1, 2017 [1] and claiming she was disabled due to hypertension, Type II diabetes, chondromalacia of the left and right patella, hamstring strains, right leg bursitis, low back pain, bipolar disorder, and PTSD. (ECF No. 7, PageID #: 125, 288). The application was denied initially and upon reconsideration, and Hodge requested a hearing before an administrative law judge

---

[1] Plaintiff filed a prior application for benefits that was denied by the ALJ on October 12, 2017. Thus, it is uncontested between the parties the period at issue is October 13, 2017, through December 31, 2021, Plaintiff's date last insured. (ECF No. 10, at 2; ECF No. 14, 2). Thus, this Court's discussion shall address evidence between the aforementioned dates only.

("ALJ").  (ECF No. 7, PageID #: 158).  On May 29, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No. 7, PageID #: 61–87).  On June 7, 2024, the ALJ issued a written decision finding Hodge was not disabled.  (ECF No. 7, PageID #: 44–56).  The ALJ's decision became final on April 22, 2025, when the Appeals Council declined further review.  (ECF No. 7, PageID #: 26–29).

On June 23, 2025, Hodge filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 10, 14). Hodge asserts the following assignments of error:

(1) whether remand is warranted pursuant to Sentence Six of §205(g) of the Social Security Act, 42 U.S.C. §405(g); and

(2) whether the ALJ's finding concerning the Plaintiff's residual functional capacity is supported by substantial evidence.

(ECF No. 10 at 1).

## III. Background[2]

### A. Relevant Hearing Testimony

At the May 29, 2024, hearing, Claimant testified that she lived with her husband and daughter, and no longer possesses a valid driver's license. (ECF No. 7, PageID #: 67–68).  She further testified that she has difficulty sleeping and was prescribed Seroquel and Remeron, which Claimant found to be ineffective. (ECF No. 7, PageID #: 71–72).  Moreover, Claimant testified that she struggled with binge eating, consistent hygiene issues, and symptoms of post-traumatic stress disorder including anger, sadness, and social isolation. (ECF No. 7, PageID #: 70–73). Furthermore, Claimant testified that she didn't cook as she couldn't stand by the oven long enough,

---

[2] Hodge's appeal relates to opinions regarding her mental impairments. Because she did not challenge anything regarding her physical impairments, the Court's discussion will relate to her mental impairment records only.

2

her diet consisted of TV dinners prepared by her daughter or her husband, she only left the house to attend doctor's appointments, and her husband primarily maintained the home. (ECF No. 7, PageID #: 74–77).

Regarding her medication regiment, Claimant testified that she discontinued her medications for a period of time in late 2020 through June 2021. (ECF No. 7, PageID #: 77). However, after resuming her prescribed medication regiment, Claimant testified that she discontinued Seroquel due to its adverse side effects including feeling like a "zombie." (ECF No. 7, PageID #: 78). Yet, she continued taking her prescribed Zoloft and Wellbutrin for her depression. (ECF No. 7, PageID #: 79). Moreover, Claimant testified that her medications assist in controlling her irritability, anger, and "violence." (ECF No. 7, PageID #: 79). Finally, Claimant testified that despite her medication regiment, she currently struggles with personal hygiene, comfortability around others, and engagement in household activities. (ECF No. 7, PageID #: 80).

### B. Relevant Medical Evidence

The ALJ also summarized Hodge's health records and symptoms:

In terms of the claimant's alleged psychological disorders, the claimant was assessed with intellectual function in the borderline range (B3F/22). She was diagnosed with post-traumatic stress disorder, on August 13, 2019 (B3F/79), and with bipolar disorder, on June 30, 2021 (B15F/15). While these findings would be consistent with the claimant's allegations of chronic anxiety and depression, the record, when considered as a whole, is not supportive of the contention that the existence of these impairments would be preclusive of all types of work. Treatment has been limited to medications (B5F/20), (B3F/16), used without side effects (B3F/57), and reported as helpful when taken (B2F/4), (B3F/51); however, the claimant is consistently reported as non-compliant with medications and follow-up (B3F/17, 19, 102). Likewise, there are significant "gaps" in the treatment records, including between January 2018 (B2F) and August 2019 (B3F/70), between October 2019 and April 2020 (B3F/56, 50), and between January and June 2021 (B3F/19). While this could easily be attributable to the claimant's mental disorders, the claimant has stated within the treatment notes that she knows what she has to do and does not do it (B3F/7). This establishes at least some element of volition, as opposed to psychopathology, into her non-compliance.

3

Notwithstanding the foregoing, mental status examinations included in the evidence have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated January 8, 2018, which indicated that the claimant presented with a depressed mood, but also with average, cooperative behavior, normal eye contact, clear speech and normal language, a logical thought process, no delusions or hallucinations, no suicidal or homicidal ideation, a normal fund of knowledge, fair insight and judgment (B2F/2-3), one dated April 21, 2020, which indicated that the claimant presented with a depressed mood and partial insight, but also as cooperative, with clear speech, a logical thought process, perception and thought content within normal limits [no suicidal or homicidal ideation, no delusions or hallucinations], with normal cognition, average intellectual function and normal judgment (B3F/51-52), or one dated November 18, 2021, which indicated that the claimant presented with depressive thought content, but also as cooperative, with average eye contact, with appearance, psychomotor activity, perception, cognition, insight and judgment within normal limits, with a full range of affect, clear speech, a logical thought process, average intellectual function, no delusions, hallucinations, suicidal or homicidal ideation (B3F/3).

(ECF No. 7, PageID #: 51–52).

The state agency psychological consultants, Deryck Richardson, Ph.D., and Courtney Zeune, Psy.D., each indicated that the claimant would be able to perform simple, routine, repetitive tasks, to make simple, work-related decisions in a setting without production-rate pace, involving only occasional changes, easily explained and/or demonstrated in advance of gradual implementation, and involving only occasional and superficial interaction with others. Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions, and each is well versed in the terminology and analytical framework employed in the disposition of these claims. The record shows a claimant with chronic psychological disorders. These would be expected to, the claimant reports (B3F/62) and the record supports (B3F/22) do, impose at least episodic deficits of intellect, focus and concentration. However, the claimant is generally described as of average intellect (B3F/3, 28), with no deficits of memory, attention/concentration/cognition (B2F/3), (B3F/41, 3) and a logical thought process (B2F/3), (B3F/40, 3), even when discernibly symptomatic of mood (B3F/75). Provided the claimant is limited to understanding and remembering simple instructions and to the making of no more than simple, work-related decisions, conducted in a setting free of anxiety- or frustration-inducing production pressures, the evidence shows she has retained sufficient, residual, cognitive function to engage in competitive work. The claimant has reported not wanting to leave her home or be around others (B3F/7). She describes a lengthy forensic history, including for felony assault against a sibling (B3F/2). Isolated treatment notes describe her as disheveled (B3F/7), or as hostile and agitated (B3F/22); however, she is demonstrably able to function in public settings, such as stores, while on shopping sprees (B3F/11), reports being agreeable to having other people around (B3F/27), has been in a stable romantic relationship since 2008 (B3F/18),

4

and generally is described in the evidence in "pro-social" terms: with average, cooperative behavior and normal eye contact (B2F/2-3), (B3F/3, 7, 14), as cooperative (B3F/28, 40), or with a normal mood and affect (B5F/10, 20). She retains this capacity, even if discernibly symptomatic of mood (B3F/75). Provided the claimant's interaction with others is controlled, as to its frequency, the evidence shows she has retained sufficient, residual, social function to engage in competitive work. The claimant has described impulsiveness (B3F/62). Isolated treatment notes describe minimal insight (B3F/75), or poor insight and judgment (B3F/22). Typically, treatment notes describe fair-to-normal insight and/or judgment (B2F/3), (B3F/3, 7, 14, 28-29), (B5F/20). Notably, she retains normal judgment (B3F/75), even if discernibly symptomatic of mood. Her mental status examinations did not materially deteriorate (B2F/2-3) compare with (B3F/3), despite changes and stressors including her husband's May 2021 heart attack (B3F/19). Provided the claimant is limited to understanding and remembering simple instructions and to work in a setting free of the need to mull complex decisions, to adhere to anxiety- or frustration-inducing production pressures, and, where she would not be asked to respond to constant change, the evidence shows she has retained sufficient, residual, adaptive function to engage in competitive work. These opinions overstate, to mild degree, the claimant's social and adaptive limitations; however, they remain largely and broadly consistent with, and supported by, the overall evidence of record and are persuasive.

(ECF No. 7, PageID #: 53–54).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3.    Through the date last insured, the claimant had the following severe impairments: obesity, carpal tunnel syndrome/peripheral neuropathy, bipolar disorder, post-traumatic stress disorder, and borderline intellectual function (20 CFR 404.1520(c)). This finding departs from that of the previous decision, in order to account for the severe impairments documented in the current evidence.

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). This finding adheres to that of the previous decision.

(ECF No. 7, PageID #: 47).

5.   After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant may frequently handle and

5

finger with the bilateral upper extremities; the claimant may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs but may never climb ladders, ropes, or scaffolds; the claimant may not be exposed to more than moderate noise levels and must avoid all exposure to unprotected heights, moving mechanical parts, or operation of a motor vehicle; the claimant is able to understand, remember, and carry out simple instructions and to make no more than simple, work-related decisions, if conducted in a work setting free of production or assembly line pace, which setting requires no more than occasional interaction with others, which setting is routine, in that it contemplates occasional changes. This finding departs from that of the previous decision, in order to account for the severe impairments documented in the current evidence

(ECF No. 7, PageID #: 50).

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from October 13, 2017, the alleged onset date, through December 31, 2021, the date last insured (20 CFR 404.1520(g)). Except that this finding recites the alleged onset date, and date last insured, it adheres to that of the previous decision

(ECF No. 7, PageID #: 56).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott*

*v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Hodge raises two issues on appeal. The first issue concerns whether remand is warranted pursuant to Sentence Six of §205(g) of the Social Security Act. (ECF No. 10, at 1). The second issue concerns whether the ALJ's findings regarding Claimant's RFC are supported by substantial evidence. (ECF No. 10, at 1). The Court addresses each issue below.

1. **Remand is not Warranted Pursuant to Sentence Six of §205(g) of the Social Security Act.**

As noted by Claimant, pursuant to 42 U.S.C. § 405(g), courts may grant remand where there is new, material evidence for which there is good cause for the failure to incorporate such evidence into the record. 42 U.S.C. § 405(g). However, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988). A claimant establishes "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs*., 727 F.2d 551, 554 (1984). Finally, the burden of establishing if remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs*., 804 F. 2d 964, 966 (6th Cir. 1986).

In support of her argument for sentence six remand, Hodge contends the following:

> [t]he administrative record includes new and material evidence related to Plaintiff's severe mental health impairments. Specifically, the documentary evidence includes records of Plaintiff's treatment at Coleman Professional Services from July 18, 2018, through February 26, 2019 … This evidence is new and was not part of the record before the ALJ at the time of the administrative hearing. This evidence is also material to the issues adjudicated by the ALJ, or whether the Plaintiff was disabled between October 13, 2017 and December 31, 2021.

8

(ECF No. 10, at 9–10). In response, the Commissioner concedes that the evidence was new, and that good cause was established for the late submission of evidence. (ECF No. 14, at 7). However, the Commissioner contends that the evidence does not meet the materiality element as Claimant fails to show how these records have a reasonable probability that they would change the outcome of the decision. (ECF No. 14, at 7). This Court agrees with the Commissioner.

### i.     Claimant's treatment records from Coleman Professional Services dated July 18, 2018, through February 26, 2019, are not Material Evidence.

As an initial matter, Claimant mischaracterizes the materiality standard. Claimant asserts that evidence is material "… if it is relevant to or if it involves or is directly related to an issue adjudicated by the ALJ." Yet for purposes of a sentence six remand, "evidence is 'material' only if there is 'a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). Additionally, "[e]vidence is not material if it is cumulative of evidence already in the record, or if it merely shows a worsening condition after the administrative hearing." *See Prater v. Comm'r of Soc. Sec.*, 235 F. Supp. 3d 876, 2017 WL 588496 at * 2 (N.D. Ohio 2017). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir.2003); *Sizemore*, 865 F.2d at 712 ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition"); *Deloge v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 517, 2013 WL 5613751 at * 3 (6th Cir. 2013).

In addition, Claimant provides minimal evidence supporting the materiality of the new treatment records. She addresses the materiality element with one conclusory sentence, "[t]his evidence is also material to the issues adjudicated by the ALJ, or whether the Plaintiff was disabled between October 13, 2017 and December 31, 2021." (ECF No. 10, at 9). However, the Court agrees

9

with the Commissioner. The new treatment records are cumulative of the record presented to the ALJ and it is unlikely that the Secretary would have reached a different disposition of the disability claim if presented with these new records. *Sizemore*, 865 F.2d at 711.

Specifically, the treatment records from Coleman Professional Services contain ten pages of Counseling Progress notes detailing changes in Claimant's condition. (ECF No. 7, PageID #: 88–98). The first counseling progress notes dated February 26, 2019, described changes in Claimant's condition, "[t]he [Claimant] said she wants to get back on her meds, the [Claimant] said she has impulse control problems with stealing, gambling, over eating. The [Claimant] wants to work on her self control and impulse problems." (ECF No. 7, PageID #: 89). Moreover, the February 26, 2019, progress notes include Claimant's stressors, "'[i]n my mind, my lie is the truth' [Claimant] argues with the spouse about talking to females at work when she knows he doesn't." (ECF No. 7, PageID #: 89).

Furthermore, the progress notes describe Claimant's appearance as well groomed, overweight build, withdrawn/preoccupied demeanor, cooperative behavior, average eye contact, slowed activity, clear speech, depressed mood, constricted affect, and finally no reports of self-abuse, delusions, hallucinations, or self-mutilization. (ECF No. 7, PageID #: 89–90). Additionally, the February 26, 2019, progress notes describe Claimant's thought progress as logical/concrete, no reports of suicidal/homicidal behavior, no impairments of memory, orientation, ability to abstract, or attention/concentration. (ECF No. 7, PageID #: 90). Finally, the progress notes described Claimant's demeanor as "… initially withdrawn and not talkative but as the session progressed she appeared to relax and became more talkative." (ECF No. 7, PageID #: 90).

Next, the final six pages of the treatment records from Coleman Professional Services contain Psych Adult progress notes dated July 18, 2019. (ECF No. 7, PageID #: 93–98). The notes

10

include descriptions of Claimant's history of present illness, as well as psychiatric, medical, social, and drug/alcohol history. The provider noted that these sections contain no changes since the last visit. (ECF No. 7, PageID #: 93). The progress notes describe Claimant's demeanor as average, normal mood/affect, unremarkable thought content, fair to poor insight/judgment. (ECF No. 7, PageID #: 95). Finally, the notes also contain progress and recommendations detailing Claimant's plan to resume her Zoloft medication, continued struggles with binge eating, and smoking. (ECF No. 7, PageID #: 96).

However, these records appear to be cumulative of records previously reviewed by the ALJ. Specifically, the ALJ noted Claimant's treatment of her psychological limitations with medication and her gaps in medication use,

> [t]reatment has been limited to medications (B5F/20), (B3F/16), used without side effects (B3F/57), and reported as helpful when taken (B2F/4), (B3F/51); however, the claimant is consistently reported as non-compliant with medications and follow-up (B3F/17, 19, 102) …. there are significant 'gaps' in the treatment records, including between January 2018 (B2F) and August 2019 (B3F/70).

(ECF No. 7, PageID #: 51). As detailed above, the July 18, 2019, progress notes, reflect these gaps in treatment and medication use as Claimant resumed her prescribed Zoloft. (ECF No. 7, PageID #: 96).  Notably, the ALJ analyzed the gap in treatment records spanning from January 2018 until August 2019. Therefore, the new records confirm the ALJ's observation of significant 'gaps' in Claimant's treatment. Thus, they are unlikely to alter the ALJ's ultimate finding.

Additionally, the ALJ considered treatment notes from various mental status examinations in the record,

> [C]laimant presented with a depressed mood, but also with average, cooperative behavior, normal eye contact, clear speech and normal language, a logical thought process, no delusions or hallucinations, no suicidal or homicidal ideation, a normal fund of knowledge, fair insight and judgment (B2F/2-3), one dated April 21, 2020, which indicated that the claimant presented with a depressed mood and partial

insight, but also as cooperative, with clear speech, a logical thought process, perception and thought content within normal limits [no suicidal or homicidal ideation, no delusions or hallucinations], with normal cognition, average intellectual function and normal judgment (B3F/51-52), or one dated November 18, 2021, which indicated that the claimant presented with depressive thought content, but also as cooperative, with average eye contact, with appearance, psychomotor activity, perception, cognition, insight and judgment within normal limits, with a full range of affect, clear speech, a logical thought process, average intellectual function, no delusions, hallucinations, suicidal or homicidal ideation (B3F/3).

(ECF No. 7, PageID #: 52). Both the February 26, 2019, progress notes and the July 18, 2019, progress notes contain similar observations regarding Claimant's presentation during appointments. (ECF No. 7, PageID #: 95) (noting demeanor as average, normal mood/affect, unremarkable thought content); (ECF No. 7, PageID #: 90) (describing Claimant's thought progress as logical/concrete, no reports of suicidal/homicidal behavior, no impairments of memory, orientation, ability to abstract, or attention/concentration). Thus, the new evidence was not material as it was cumulative to what the ALJ previously considered and there was not a reasonable probability that the ALJ would have reached an alternative outcome of the disability claim if presented with this new evidence. *Foster*, 279 F.3d at 357. Therefore, remand is not appropriate under Sentence Six of §205(g) of the Social Security Act.

   2. **The ALJ's Assessment of Claimant's Symptom Severity, Consistency, and RFC are Supported by Substantial Evidence.**

Claimant's second issue asserts the ALJ's RFC is not supported by substantial evidence due to the ALJ's assessments of Claimant's subjective symptoms. (ECF No. 10, at 11–19). To support this argument, Claimant contends the ALJ "failed to consider all the evidence in his determination of the plaintiff's residual functional capacity. Specifically, the ALJ cites to only evidence that supports his conclusion, and fails to acknowledge, or discuss findings that suggest a greater level of severity or a more limited capacity." (ECF No. 10, at 13). Moreover, Claimant contends, "[b]y failing to acknowledge, discuss, or accurately recite this evidence, the ALJ fails to

12

resolve inconsistencies in the record. Therefore, findings concerning Plaintiff's RFC and conclusion that Plaintiff is not disabled is not supported by substantial evidence." (ECF No. 10, at 13–14). Claimant specifically challenges two of the ALJ's findings regarding his consistency analysis (1) the ALJ's citation of 'significant gaps' in Claimant's treatment and resulting non-compliance with medication as a significant basis for his inconsistency conclusions regarding her subjective symptoms and (2) the ALJ's mischaracterization of Claimant's daily activities. (ECF No. 10, at 13–14, 18–19).

In response, the Commissioner contends Claimant takes issue with the ALJ's assessment of her subjective complaints and symptoms, yet the ALJ properly considered this evidence pursuant to 20 C.F.R. § 404.1529, thus the ALJ's determination is supported by substantial evidence. (ECF No. 14, at 8–11). Accordingly, the Court finds the Commissioner's argument well taken.

### i. The ALJ's findings concerning Medication Noncompliance are supported by Substantial Evidence.

Considering Claimant's mental health complaints, the ALJ noted Claimant's subjective symptoms related to Bipolar Disorder, PTSD, chronic depression, anxiety, difficulties with concentration, racing thoughts, difficulties being around others, and impulsivity. (ECF No. 7, PageID #: 50). Throughout his assessment of Claimant's subjective symptoms and consistency, the ALJ notes Claimant's non-compliance, "… the claimant is consistently reported as non-compliant with medications and follow-up. (citation omitted)." (ECF No. 7, PageID #: 51).

The ALJ subsequently concluded,

Likewise, there are significant "gaps" in the treatment records, including between January 2018 (B2F) and August 2019 (B3F/70), between October 2019 and April 2020 (B3F/56, 50), and between January and June 2021 (B3F/19). While this could

13

easily be attributable to the claimant's mental disorders, the claimant has stated within the treatment notes that she knows what she has to do and does not do it (B3F/7). This establishes at least some element of volition, as opposed to psychopathology, into her non-compliance.

(ECF No. 7, PageID #: 51, 52). The ALJ then found that Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 7, PageID #: 52). The ALJ again found the Claimant's treatment gaps and non-compliance as inconsistent with her mental health impairments,

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant has been non-compliant with medications and follow-up (B3F/17, 102). Likewise, there are significant "gaps" in the treatment records, including between January 2018 (B2F) and August 2019 (B3F/70), between October 2019 and April 2020 (B3F/56, 50), and between January and June 2021 (B3F/19). While this could easily be attributable to the claimant's mental disorders, the claimant has stated within the treatment notes that she knows what she has to do and does not do it (B3F/7). This establishes at least some element of volition, as opposed to psychopathology, into her behaviors.

(ECF No. 7, PageID #: 53).

When formulating a Claimant's RFC, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors

14

but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*: *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

Moreover, a credibility assessment is firmly within the ALJ's discretion and not to be decided anew by a reviewing court. *Vaughn v. Berryhill*, No. 3:16-cv-02821, 2018 U.S. Dist. LEXIS 15916, 2018 WL 632377, at *6 (M.D. Tenn. Jan. 11, 2018). It is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (quoting *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003)). Additionally, in order to be entitled to benefits, a claimant must follow treatment prescribed by her medical sources if this treatment is expected to restore the claimant's ability to work. 20 C.F.R. § 404.1530(a). As Claimant notes, Social Security Ruling 18-3p (SSR 18-3p) provides guidance for evaluation of non-compliance, or failure to follow prescribed treatment. Social Sec. Ruling, SSR 18-3p. In making a determination regarding non-compliance, the adjudicator must assess (1) whether the prescribed treatment would expect to restore the claimant's ability to perform substantial gainful activity, and (2) whether the individual has good cause for not following the prescribed treatment. Social Sec. Ruling, SSR 18-3p; Titles II & XVI: Failure to Follow Prescribed Treatment, SSR 18-3p.

As Claimant notes, the Sixth Circuit has long recognized that for a claimant suffering from mental illness, noncompliance with treatment could be a symptom of his condition, rather than evidence that his condition is not disabling. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283

15

(6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)); *Polhemus v. Colvin*, 2016 WL 949218, at *4 (E.D. Mich. Mar. 14, 2016); s*ee also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Although the Sixth Circuit has not established a *per se* rule that the existence of a mental impairment constitutes an acceptable reason for failure to follow prescribed treatment, noncompliance with medication could be justified by mental illness if there is some evidence linking the mental illness to the noncompliance. *Burge v. Comm'r of Soc. Sec.*, No. 1:13 CV 87, 2013 U.S. Dist. LEXIS 180376 (N.D. Ohio Dec. 26, 2013). Various Courts within this District follow the standard set out in *Burge,* "[t]o establish a severe mental impairment as an acceptable reason excusing a claimant's adherence to a medical regimen, including prescription psychiatric medications, the record must contain evidence expressly linking noncompliance with the severe mental impairment. The requisite evidence of that link will preferably appear in an opinion or assessment by a medical source." *Id.; See Lavenia v. Commr. of Social Sec.*, 2022 WL 211466, at *1 (N.D. Ohio June 13, 2022); *Borden v. Commr. of Social Sec.,* 2021 WL 3492105, at *14 (N.D. Ohio Aug. 9, 2021); *Sandvoss v. Commr. of Social Sec.,* 2018 WL 4625564, at *11 (N.D. Ohio Sept. 27, 2018); *Black v. Commr. of Social Sec.*, 2013 WL 6837193, at *4 (N.D. Ohio Dec. 26, 2013). Finally, the burden lies with the plaintiff to establish the justifiability of noncompliance. *See Black,* 2013 WL 6837193, at *4.

In the present case, Claimant failed to meet her burden in establishing an express link between her mental impairments and her medication/treatment noncompliance. The evidence of record shows that Hodge has severe mental impairments including bipolar disorder and PTSD as

16

well as a history of repeated noncompliance with her psychiatric medication regimen. (ECF No. 7, PageID #: 47, 51–52). For example, records from Hodge's psychiatric evaluation dated June 30, 2021, under the section titled "Plan," the provider noted, "High complexity does not keep follow up appointments. Symptoms exacerbated due to being off medications for several months." (ECF No. 7, PageID #: 418); *see also* (ECF No. 7, PageID #: 420) ("Client came in today wanting back on her meds and was upset and angry that she can't get them today. 'It's all about the money!' 'All you counselors do is look at the computer or the clock!' She was tearful, angry & sarcastic. She had missed an apt in January & her case got closed. She has been off her meds for about 1 month."). Moreover, the ALJ questioned Claimant regarding her lapse in treatment from the end of 2020 until her return in June 2021. (ECF No. 7, PageID #: 77). Claimant responded, "I felt nothing was wrong with me. It's everyone else but me." *Id.* Claimant further testified that she stopped taking her Seroquel due to adverse side effects. (ECF No. 7, PageID #: 78–79). Claimant also confirmed that she'd been taking her medicine since that time. (ECF No. 7, PageID #: 78).

As noted above, the justifiability of noncompliance is a burden that rests with Hodge. Yet, Hodge's brief and the record contain no opinion or assessment by a medical source, i.e. a discussion by a doctor or other professional, to demonstrate Hodge's mental impairments were expressly linked to her noncompliance. *See Rogers v. Comm'r of Soc. Sec.*, Civil Action No. 17-14151, 2019 U.S. Dist. LEXIS 38563, at *9 (E.D. Mich. Jan. 17, 2019) (establishing link between mental health impairment and medication noncompliance through consulting examiner opinion that noted [Claimant] had a history of noncompliance with psychiatric medication which triggered many episodes of decompensation); *see also Marjorie Uhl v. Commr. of Social Sec. Administration*, 2021 WL 2188303, at *10 (N.D. Ohio May 14, 2021) (establishing link between mental health impairment and medication noncompliance through licensed clinical social worker

17

opinion including statement that "[Claimant] had previously become so paralyzed by depression and anxiety that she dropped out of treatment for a few months and stopped taking her insulin and mental health medications.").

Moreover, in *Rogers*, the medical record "included [examples of] Rogers' noncompliance with medication as a symptom or component of his illness." *See Rogers,* 2019 U.S. Dist. LEXIS 38563, at *9. Additionally, the *Rogers'* Court expressly noted, "[t]he records emphasize his need for support in medication management as pivotal in treating his impairment." *Id.* at *10. Here, Hodge's treatment notes contain statements that noncompliance *may* trigger or cause her issues. (ECF No. 7, PageID #: 47, 51–52, 418, 420). However, the record does not contain evidence that Hodges' noncompliance is a symptom or component of her illness. Therefore, Hodge cannot justify her noncompliance.

Although the evidence contains references to compliance and noncompliance, the evidence provided by Hodge falls short of establishing a direct link. The ALJ considered the evidence of record, including Hodge's periods of noncompliance with her medication regimen, objective medical evidence, the effectiveness of her current medication regimen, and Hodge's daily activities, but did not find Hodge's allegations entirely consistent with the record. (ECF No. 7, PageID #: 51–53). Thus, the ALJ's conclusions regarding Claimant's symptom severity, consistency, and medication noncompliance are supported by substantial evidence.

      ii.      **The ALJ's Determination regarding Claimant's Daily Activities is Supported by Substantial Evidence.**

Additionally, Claimant challenges the ALJ's description of her daily activities. Specifically, Claimant contends the ALJ "fails to provide an accurate portrayal" of Claimant's

daily activities as the ALJ overstated her ability to perform these activities. (ECF No. 10, at 16–19). Therefore, Claimant concludes the ALJ did not build a logical bridge between this evidence and his RFC findings. (ECF No. 10, at 19). However, this Court finds the ALJ's analysis regarding Claimant's activities is supported by substantial evidence. The ALJ described Claimant's daily activities in his decision,

> [t]he claimant has reported the following daily activities: the claimant showers weekly, a habit of "years" (B3F/51). She spends time with her husband and children for pleasure, swims, goes on shopping sprees, and worked, alongside her husband, at a "door-dash" delivery business (B3F/20, 11), (B3F/57, 51, 28). Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. In short, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. While none of these activities, considered in isolation, would warrant or direct a finding of "not disabled"; when considered in combination, they strongly suggest that the claimant would be capable of engaging in the work activity contemplated by the residual functional capacity.

(ECF No. 7, PageID #: 52). The ALJ then concluded, Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely consistent supported by the medical evidence and other evidence in the record." (ECF No. 7, PageID #: 52).

The Court agrees with Hodge that the ALJ mischaracterized some of her daily activities. For example, the ALJ stated that Hodge "worked, alongside her husband, at a 'door-dash' delivery business (citations omitted). Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (ECF No. 7, PageID #: 52). However, during the hearing, Hodge testified that she stopped completing Door Dash work independently around 2016 or 2017 and currently rides along in the passenger seat with her husband as he works for Door Dash. (ECF No. 7, PageID #: 82). Her testimony also indicates that

19

she did not enter restaurants or complete deliveries, and she has not had a license since approximately 2014 or 2015. (ECF No. 7, PageID #: 68).

Additionally, the ALJ listed "going on shopping sprees" as a daily activity. (ECF No 7. PageID #: 52). Yet, the ALJ cited a psychiatric evaluation note that listed "shopping sprees" under a description of Claimant's history of present illness of bipolar disorder. (ECF No. 7, PageID #: 412). However, Claimant's contentions that the ALJ mischaracterized her time with family, swimming, and personal hygiene habits are to no avail as the record contains explicit references to these activities. (ECF No 7. PageID #: 421) (noting Hodge's social supports noted to include, "[t]ime with her husband and kids; enjoys swimming"); (ECF No 7. PageID #: 452) ("she hasn't showered on a daily basis for years").

Nevertheless, the ALJ's characterization of Hodge's activities of daily living is based on substantial evidence. As noted above, the ALJ did not mischaracterize Hodge's time with family, swimming, or her personal hygiene habits as the record contains explicit references to these activities. (ECF No 7. PageID #: 421, 452). Thus, based on a review of the record, the ALJ properly concluded that Hodge's activities of daily living were inconsistent with her subjective allegations of disabling mental problems. (ECF No. 7, PageID #: 52). Although the ALJ mischaracterized some of Claimant's daily activities, which may have been in error, the Court finds that his evaluation of Claimant's daily living activities and findings regarding the consistency of those activities was supported by substantial evidence. *See Dial v. Kijakazi*, No. 1:23-cv-00071, 2024 U.S. Dist. LEXIS 82151, at *28–29 (M.D. Tenn. May 6, 2024) (finding the ALJ erred in his mischaracterization of some of claimant's daily activities, but overall, the ALJ's evaluation of Plaintiff's daily living activities and consistency of those activities was supported by substantial evidence).

Finally, Claimant offers favorable evidence in order to support her contention that the ALJ only cites evidence that supports his conclusions and fails to discuss evidence that supports a greater level of severity or more limited RFC. (ECF. No 10, at 13). In his decision, the ALJ found Claimant's symptoms to be not as severe as alleged,

> [M]ental status examinations included in the evidence have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated January 8, 2018, which indicated that the claimant presented with a depressed mood, but also with average, cooperative behavior, normal eye contact, clear speech and normal language, a logical thought process, no delusions or hallucinations, no suicidal or homicidal ideation, a normal fund of knowledge, fair insight and judgment (B2F/2-3), one dated April 21, 2020, which indicated that the claimant presented with a depressed mood and partial insight, but also as cooperative, with clear speech, a logical thought process, perception and thought content within normal limits [no suicidal or homicidal ideation, no delusions or hallucinations], with normal cognition, average intellectual function and normal judgment (B3F/51-52), or one dated November 18, 2021, which indicated that the claimant presented with depressive thought content, but also as cooperative, with average eye contact, with appearance, psychomotor activity, perception, cognition, insight and judgment within normal limits, with a full range of affect, clear speech, a logical thought process, average intellectual function, no delusions, hallucinations, suicidal or homicidal ideation (B3F/3).

(ECF No. 7, PageID #: 52). Claimant points to four other mental status examinations not explicitly cited by the ALJ in his determination to rebut the ALJ's conclusion. (ECF. No 10, at 16). Specifically, on July 18, 2018, Claimant displayed fair to poor insight and judgment (ECF No. 7, PageID #: 95); on February 19, 2019, Claimant appeared overweight, preoccupied, and withdrawn with slowed activity and constricted affect (ECF No. 7, PageID #: 89); on September 5, 2019, Claimant exhibited intermittent eye contact, a depressed and anxious mood, and a tearful affect (ECF No. 7, PageID #: 465); and on April 21, 2020, Claimant presented with a depressed mood (ECF No. 7, PageID #: 453). However, the additional mental status examinations cited by Claimant do not undermine the ALJ's conclusion. While these records contain some abnormal findings, such as fair to poor insight and judgment in July 2018, slowed activity and constricted affect in February

2019, intermittent eye contact and a depressed and anxious mood in September 2019, and a depressed mood in April 2020, they largely reflect the ALJ's conclusion that the mental status examinations were not uniformly normal, noting that they were "albeit not universally" benign. (ECF No. 7, PageID #: 52, 95, 89, 465, 453). Thus, the ALJ's findings are supported by substantial evidence.

Moreover, it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Rather, because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted). The ALJ considered the evidence of record, including Claimant's periods of noncompliance with her medication regimen, objective medical evidence, the effectiveness of Claimant's current medication regimen, treatment notes stating Claimant's presentation was within normal limits, and Hodge's daily activities, but did not find Hodge's allegations entirely consistent with the record. (ECF No. 7, PageID #: 51–53). Thus, substantial evidence supports the decision, and this Court will not disturb the ALJ's findings.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED

22

Dated: March 13, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE
